Number 151763, United States v. Manuel Acevedo-Hernandez May I please the court? Liza River for appellant In this case, prior to a trial, the government asked the court to rule excluding evidence that had to do with the guilt of Luzgardo Acevedo-Lopez. Both sides briefed the issue and the court ruled that no evidence could be brought that had to do with the guilt of this man because it would, at that time, confuse the issues of trial, which was whether my client did accept a bribe. However, once the government had that rule in its favor, at trial, the first thing that happened, judges, was that the government opened its case by stating to the jury that Felix Babilonia had been denied justice. And then it went on to state that the government had evidence that the family of Felix Babilonia entered the courtroom, such as the one they were in, looking for fairness, and they did not get that because appellant had justice for sale. After that, the government sent a lady, Miriam, she was the mother-in-law of the man who had died, and she was asked two things important to this case. Demeanor of the judge. What did she see when she went to that trial, this judge, the way he acted? She said that he was biased, that he ruled at all times for the defense in that case, and that there was overwhelming evidence that that trial had been unfair. The government went against the ruling of the court, which they had sought prior to a trial. Not only that, at the end of the case, again, the government started closing, arguing, stating that Felix Babilonia had been denied justice. Those facts throughout trial, opening, witnesses, closing, denied my client a fair trial. Why? Because issues were brought before the jury that had nothing to do with the bribe that it was alleged that he took. The issues brought were issues of fairness, as to Felix Babilonia, about his family, victims, children, loss of money, heartbreak, suffering. Those were put before the jury in this case, and not whether or not the bribe had been taken by my client. Was that part of the testimony you objected to below? Part of it only. So the part about the... The witness. The witness only. Babilonia, she was not objected to. Correct, Your Honor. Opening was, it went through. Medium was, in fact, it was erased. It was said that she was a fact witness. She didn't know any facts, Your Honor. She just knew what she felt, what she saw, and in a sense, she was biased because she was a victim in the case because of the death of her son-in-law. How does that compare to the other evidence against your client? What, Your Honor? Thinking about harmless error. I believe, Your Honor, that... As I recall, the testimony of Lito, who was in between your client and the defendant in the Babilonia case, he was a fact witness about all the alleged bribery that took place. Direct evidence. Am I correct? Correct, Your Honor. However, we have to see that Lito had something to gain, which was money. That's something that the jury, I mean, the defense raised it, did it not? Definitely, yes, it did. So the jury weighed that against the evidence against your client. The government at that time said, Your Honor, that Lito had given them documentary evidence that in fact sustained what he was saying at trial. However, if we look at the record of this case, the evidence given by Lito to say what I am saying is true had been made by Lito himself. Receipts, photographs, those were made by Lito. They were not made by third parties. Is there anything in the evidence that casts doubt on the evidence suggesting that your client reviewed the case files and gave advice to the other party in the case as to how to most effectively win the case? The only thing that there is as to that, Your Honor, is Lito says that he did. There is in the change of Lugardo Acevedo, in this case, he was asked by the court if he had known at any time that my client had given cues for his side. The answer was no, I didn't know that. So it was only Lito saying these things. Lugardo says he never heard about that before. There is no corroborating evidence of your client going to the scene of the accident with him to look at it or reviewing the files? There was evidence, yes. There is corroborating evidence. Yes, there was evidence as to that, Your Honor. And what you got is a record in which there is evidence of your client during the case giving cues to the other side that is from Lito and then corroborated outside of Lito and then evidence of your client receiving gifts from Lito. Well, the fact that he got gifts from Lito doesn't mean that they came from someone else, Lugardo. No, no. I'm just saying we have the gifts plus corroborated evidence of a judge during a case giving cues to one side. That's pretty bad evidence, isn't it? Yes, it is, except that it all came from Lito. No one else said that except Lito. But you said there was corroborating evidence of Lito's testimony with respect to the cues. Really, no. Maybe I said something wrong, but no. Lugardo never, never found that out. Lugardo said he didn't know that. Was there any other corroborating evidence? No, no. Except Lito, none. Well, are there cases that say there has to be corroborating evidence? No, Judge. Of course not. So the evidence of one witness that is believed by the jury is good enough to convict your client? However, Your Honor, I think that in this case there was doubt because Lito is the only one who had a motive. He had to gain money from this, and he was the one who did everything in the case. He was the one who interacted with my client. He was the one who gave gifts. He was the one who said he paid for X, Y, and Z. You could argue that to the jury. The jury might not have believed Lito, but apparently they did. Well, Your Honor, at trial, appellants sought to bring in Lugardo, and the court denied having him testify in the case because Lugardo raised Fifth Amendment privilege. That's not an uncommon thing where you have a criminal case. It happens, but when you go to the change of plea of Lugardo, Your Honor, he didn't know many, many things regarding Lito, which was what the defense wanted to bring out. You may finish. Okay, Your Honor, in that plea, Lugardo denied knowing about some monies allegedly given to my client. Lugardo denied knowing about motions, denied knowing about cues. That was irrelevant to be brought out at trial. Those were only Lito's actions, no one else's. Well, thank you. Thank you, Judge. Just wait a minute. Judge Leipitz may have questions. Yes, thank you. Yes. On the question of corroborating evidence of your client's participation in bribery, the government in its brief in responding to your sufficiency of the evidence argument refers to an audio recording of your client's conversation with Lito on March 22, 2013, two days before the trial, in which your client is giving advice on how Lugardo's lawyers could use police car records to attack the prosecution's case. Is that somehow an inaccurate characterization of evidence in the record? No, Your Honor, it is not. It is there. The recording is there. All right. Thank you. Thank you. Mr. Meisler. That's correct. I meant myself, yes. Good morning, Your Honor. Scott Meisler on behalf of the United States. I'll pick up on Judge Lopez's point as well and just answer Judge Barron's question. In addition to the recording, the very first witness the government called at trial was Rafi Lopez, who was Lugardo's cousin and driver. Because Lito had been seen around town with the judge, he was asked not to attend the trial. Rafi Lopez did attend the trial and discussed how one of his roles was to be basically another intermediary to get in touch with Lito, who would in turn get in touch with the judge and the government, and then also submitted call records, cell phone call records, that verified that Lito had spoken to the judge, including during the days of the trial. I think the prosecutor in rebuttal summation noted that there were 65 calls during the month of March between the judge and Lito, 20 of which the judge had originated. So that was a key piece to our discussion of the sufficiency of the evidence, and if the court found any instance of misconduct in opening and closing arguments or the testimony of Miriam Rodriguez, why there was no prejudicial error here. This is a case in which the testimony of the government's cooperating witness was corroborated in almost every single key aspect. And one thing I'll mention, not to belabor the point, is also the timeline of payments in this case. The acquittal, the judge acquitted Lucardo on March 27th, I believe, the very next day. Lucardo made a $25,000 payment to Lito with the second $25,000 following the week after that. So there was, again, both temporal and step-by-step corroboration of the cooperating witness's testimony in this case. Opposing counsel also brought up the Fifth Amendment issue. And as Judge Torway noted, this is an issue that arises with some frequency. Here, the district court, I think, followed almost by the book, this court's decision, United States v. Castro, cited Castro at the end of his colloquy. That's about a 30 or 40-page colloquy. The court made every effort to try to find common ground, try to find a limited set of questions that Lucardo might be able to answer. But by surveying both defense counsel and the government, because this court's cases require district courts to consider what will happen on cross-examination and whether a witness who potentially could testify indirect would then validly invoke on cross, the court considered both direct and cross and determined that Lucardo had validly invoked his Fifth Amendment right. We defended that both on the basis that he might have incriminated himself with respect to additional criminal charges and, of course, because he was still a defendant pending sentencing. And I don't believe that opposing counsel has contested that Lucardo had a Fifth Amendment right as his own sentencing and could have adversely affected his sentencing through his testimony on direct or cross. On the issue of misconduct itself, I want to make clear to the court that as far as Miriam Rodriguez's testimony, it was a very, very limited piece of the trial. We're talking about evidence, direct testimony that went 10 pages, three or four of which were filled with objections and colloquies addressing the defense objection. So this is a very, very minor piece of the government's puzzle. It was the second witness, the government called 19 witnesses, and it did not make the Babylonian trial the centerpiece. The centerpiece was the bribery plot. Yes, sir. I have a question, an issue that is raised but hasn't been argued. It has to do with whether this is one case of bribery or several. I find some inconsistency between the government's position in adding up all the different payments to meet the $5,000 limit. Yes. And yet you claim that these are different cases of bribery rather than just one when the object is the sole object of all the payments is basically to throw the case. We've argued it under the three-factor test that the Second Circuit set forth in the Arshad case. One of those, of course, is whether this goes to a single action. And our position below and in here is that it was not a single action. It was a course of conduct. It was a course of favorable treatment. But when you bring a conspiracy charge, you seem to be saying any overact in furtherance of the conspiracy is a separate bribe. I'm not sure that's what we're saying. How many bribes were there, according to you? It sounds like it could be 60, 70. I'm not sure we're saying that every single payment amounts to a bribe. How would you distinguish between them? Between the different instances? Different payment. I think we're kind of looking at this through the three-factor test that Arshad described. We're not looking at it through the lens of conspiracy law where it's overacts. That doesn't answer the question. Because if you want to disaggregate the payments, it seems like you'd have to disaggregate every payment. But you don't seem to want to say that. You don't seem to say, well, just somehow we just got over two. I'm not sure we want to say we just got over two. Every payment? In this case, let's take a step back and say in this case, for example, if you had some of the instances you already described, if you were talking about an instance where the judge was giving a cue, the judge was granting a motion, the judge was acquitting them, the judge was covering it up afterwards, you can imagine those if they were tied to specific payments, right? Even if they're periodic payments, you can imagine those as being bribes over a course of conduct. It's different if they were periodic payments versus if they were tied to specific things. You don't make an allegation that any of these were tied to some specific thing. No, I think we're doing this. What was this? Tell me the two bribes and the two specific instances that they go to. I agree, Your Honor. We did not tie it that way. You don't have to tie them. I think that's right. And let me just point to the court's footnote two of the Arshad decision. And the Second Circuit there kind of traced the history of the bribery sentencing guideline and said this too is more than one bribe was added because multiple instances during a single course of conduct were falling out of the guidelines calculation. So that's, I do think multiple instances, and I'm not sure we have to show a specific tip or tactics for that. You either do or you don't. Well, I'm not sure we do under Arshad. Do you recognize that you don't? I haven't thought it through, Your Honor. I don't want to lock the government down to something like that. But if you say you don't, if you say you do and you haven't, then that's a problem for you. So on this record, don't you have to take the position that you don't have to make that connection? I would think if the sole, let me try to answer it this way. If the sole factor in the court's analysis were like the first Arshad factor, which is single incident, single action, I think you probably would have to show that. But what the Second Circuit said in Arshad, and it's not binding precedent here, but it's the way that the parties have analyzed this case both in district court and in the briefing here, is it's not just that factor, right? It's not just the this for that kind of payments. It's also whether you're looking at an installment project, right? You're looking at where it's $100,000. That hurts you because I would have thought one way to read Arshad would be if you can show this for that, that's an indication that you've got a bribe. But then if you could show actually it was installment payments, then it might still be one. It might still be, yeah, I agree with that, Your Honor. But the first factor, you've got to show this for that. You can't go, well, we can't even show a tie, it's this for that. But because it's not an installment payment,  Do you see what I'm saying? I see what you're saying, but I guess my view in it was just that, if you have two factors that show you, right, this is not a single, this is a course of conduct, right, over which multiple payments were made. And we're not just asking you to do one single thing for us. That's the way I kind of viewed it. It's a very simplified term. The only thing that was important here wasn't the motions, it was the end trial. It was, but I also think, and this is what the government also argued, it was not just the raw fact of an acquittal that everyone would kind of furrow their brow at. It was a defensible, it was a defensible, preservable acquittal, to put it that way, right? It was something that would withstand scrutiny, which is why the judge gave tips along the way. It was something that would look good and not just be a raw outcome. That was the allegation that it was a favorable course of treatment, not just a single result, Your Honor. The object was the trial. Everything else was leading up to the trial. And the fact that there were different payments just means that they were trying to keep the judge happy by continuing to provide money. Right, and I'll say it. Let me give you one fallback argument here, which is that... Let me ask you one last question. We have never decided this issue, have we, in this circuit? You have not, and this, I think, ties into the argument I was just going to give. If the court doesn't want to make law in this case, or if it does, it can disagree with the government, it can disagree with the district courts, it can disagree with Arshad, for that matter, or say that we lose under Arshad. But this case, to me, is somewhat unique in the sense that it has an extremely strong record on harmless error. This court, I think, is strong on harmless sentencing error. The district court made a conscientious effort to weed through these issues with no binding circuit law on point and then said, I want to be clear. It said, as clear as day. It walked through the different guidelines, defense levels that could have applied had the court sustained some of the defendant's objections and then said, I want to be clear that if I was wrong about this, I would go to the statutory maximum. And it's relevant in that regard that the government had understood the range to be lower in accord with the probation office and it asked for an upper variance. So the court gave the sentence, the government argued and explained that even though its calculations yielded that same sentence as a within-range sentence, the court made clear it would have varied upwards to the same sentence. So the court doesn't want to... Are you telling me that it doesn't make any difference whether the court considered this one bribery or multiple briberies? Yes, this is a harmless... Yes, what? Yes, I think it did not make a difference to the court in this case. The court was well aware, and this court has demanded an exacting showing for harmless guidelines errors, but I think the district court here... That's true as to every enhancement. That's true as to every enhancement. I have not addressed the other enhancement, Your Honor, because I think that was largely resolved by this court in the co-defendant's appeal, Lugardo's appeal. I think that was largely resolved by this increased salary he would get. But there too, it doesn't matter, because on your account, the district court said clearly whether I enhanced or not, I would still give the same sentence. Yes, so I see him over my time, but I believe this is a very clear case, and so if the court doesn't want to get into the weeds of the more than one bribe, it can certainly affirm on the basis of harmless sentencing error. Thank you. Wait a minute, sir. On the theme of harmless error, you were not trial counsel, I gather. Is that correct, counsel? That is correct. Yeah, well, you see this a lot, and I have to say it troubles me. I'm talking about the Marilyn Rodriguez testimony. I gather the government defends that. They call her to share her observations  is conducting the trial. They call her to share her observations of the way that the judge is conducting the trial. It struck her as odd, sufficiently odd, that she filed a complaint, and I guess, in other words, it's often too confirmed that the judge was participating in a bribery scheme. I mean, what the government has done is, in my view, has numerously created an issue here. I mean, as you've indicated, the evidence of bribery was very powerful for many of the reasons we've talked about. For the government to suggest that they needed her testimony, her observational testimony, to strengthen the case of bribery, that, frankly, that strikes me as a complete contrivance, and it lends force to a parent's argument that she was their only, only to evoke sympathy from the jury. And I'm very, I'm very troubled when the government needlessly creates an issue like this, and frankly, in my view, is less than candid about what the government was trying to accomplish. You were not trial counsel. It's perhaps not fair to direct that criticism at you, but I have to observe that it strikes me as very difficult to defend the decision to call her for the purpose that you've described, and then to harm Missouri once again to defend what was done here. I guess I'm asking you to, how can you defend the decision to call her for the purpose that you've set forth in the brief? I think there are two points. I don't want to push too hard in the face of the court's very, very pointed comments, but I think it's important to emphasize, first of all, the limited role the witness played. I think in retrospect, it perhaps was ill-advised to call her. Her testimony was subject to objection. It was very brief. I will say that it is important to give victims roles in criminal cases. By statute, the government has to do so. At the sentencing phase, perhaps that was premature here, and it can seem ill-advised. I will say, two other quick points. The government, I think it's helpful to look at the way the government used the testimony. Was the government using this in a way that elicited sympathy that was obviously, in the eyes of the district court, eliciting sympathy from the jury? I think no. The district court made a contemporaneous factual finding that the testimony was not affecting the jury that way. It's hard for us on a cold record to know that. The court was there, could observe the juries, and made, I think, a very point, made a point of noting on the record that it found no evidence of an improper appeal to juror sympathy. And one last point. It may be helpful also to look at page 98 of the government's appendix, which is the closing argument. Sometimes when the government calls a witness and elicits something that seems inflammatory or prejudicial, we look to the closing argument to see did the government emphasize that point. I think if the court looks at page 98 of the government's appendix here, you'll see that the government really did, in summation, describe her testimony to the jury as quite factual and it paired that testimony with the preceding witness, Raffi Lopez, who I mentioned earlier was the driver, Lugardo's cousin and the driver who was in court also during that session and didn't describe the judge's demeanor. But that is how the government viewed it as two recipient witnesses, two eyewitnesses, and while perhaps the introductory questions that the government asked of the witness in retrospect may seem ill-advised, I don't think the government and the district court didn't view the government as improperly eliciting sympathy and the government didn't emphasize that testimony in a way that would indicate it made that testimony a centerpiece of its case in this bribery trial. I would like to add that I joined Judge Leibniz's comments on this because I see this happening over and over again and occasionally that this district thrives here. Strong cases are made borderline sometimes by some of these unnecessary evidence presented. I take the point that Your Honor's written about this in separate opinions. I do want to mention Nobody seems to read it. Well, they do read it and I do want to make clear we are one government and I speak for the government obviously I don't want to whitewash anyone's conduct including Your Honor's words about this district. But in this case I do want Your Honor to know to take some comfort in the fact that the opening comment the opening argument and the questioning of Muriel Rodriguez was actually done by Department of Justice Public Integrity Attorney. The summation was done by attorneys from the District of Puerto Rico. So I hope Your Honor doesn't leave this case and this record and this argument with the same thoughts he's had before about the government generally but also specifically I don't want to throw under the bus attorneys who did not make those comments in this case. Thank you. Thank you. Thank you.